UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYANT LERASHIO LUSTER, | Case No. EDCV 14-00455 AN |
| Plaintiff, | MEMORANDUM AND ORDER |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

Pursuant to the Court's Case Management Order, the parties have filed the Administrative Record ("AR") and a Joint Stipulation ("JS") raising four disputed issues. The parties have consented to proceed before the Magistrate Judge. The Court has carefully reviewed the parties' respective contentions in conjunction with the AR. This matter is now ready for decision.

**Issues #1, #2, and #3**

Plaintiff contends that the Administrative Law Judge ("ALJ") erred by improperly rejecting the opinion of examining psychiatrist Marshall Jeffrey Handleman, M.D. (JS 3-6; AR 296-300.) Plaintiff further asserts that the ALJ erred by failing to properly consider Dr. Handleman's findings of marked limitations in mental functioning in the assessment of Plaintiff's residual functional capacity ("RFC") and in the formulation of

the hypothetical questions presented to the vocational expert ("VE"). (JS 8-11.)

Dr. Handleman completed a psychological evaluation of Plaintiff in August 2011. (AR 296-300.) Dr. Handleman's diagnostic impression was as follows: Axis I: no diagnosis; Axis II: learning disabled and probable ADD; Axis III: as per medical history; Axis IV: psychosocial stressors: education, occupation, socialization, and access to health care; Axis V: current GAF of 49.[1] (AR 299.) Dr. Handleman reported that Plaintiff had "major problems with irritability and social isolationism" and "problems with cognition, orientation, and memory. . . [and] particularly concentration." (AR 299.) Plaintiff's mood was depressed, somewhat anxious, and constricted, his affect was anxious, and he demonstrated limitations in abstract thinking. (AR 298-99.) Dr. Handleman opined that Plaintiff would have "marked" limitations maintaining social functioning, concentration, persistence and pace, performing work activities on a consistent basis without special or additional supervision, and completing a normal work day or work week due to his mental condition. (AR 300.) Dr. Handleman further found that Plaintiff would have "moderate" limitations performing detailed and complex tasks, accepting instructions from supervisors, interacting with coworkers and the public, and handling the usual stressors, changes and demands of gainful employment, and "mild" limitations maintaining composure and even temperament and performing activities of daily living. (AR 300.) Dr. Handleman concluded that Plaintiff would be able to perform simple and repetitive tasks. (AR 300.)

In assessing Plaintiff's mental RFC, the ALJ gave significant weight to Dr. Handleman's opinion that Plaintiff is capable of performing simple and repetitive tasks and that Plaintiff should avoid interacting with the public. (AR 12.) The ALJ, however, gave less weight to Dr. Handleman's findings that Plaintiff has "marked" limitations

---

[1] Mental health professionals use a multiaxial system for identifying mental disorders. Axis I is used for reporting clinical disorders, Axis II is used to report personality disorders and mental retardation, Axis III concerns general medical conditions, Axis IV notes psychosocial and environmental problems, and Axis V is the global assessment of functioning "GAF." See The Diagnostic And Statistical Manual of Mental Disorders (" DSM–IV ") (4th ed.1994) at 24-36.

Page 2

maintaining concentration, persistence and pace, performing work activities on a consistent basis without special or additional supervision, completing a normal work day or work week, and maintaining social functioning. (AR 12, 15-16.) The ALJ rejected these limitations because they were inconsistent with Dr. Handleman's findings on examination, as well as the overall medical record. (AR 16, 298.) Plaintiff contends that the ALJ implicitly rejected Dr. Handleman's opinion without providing specific, legitimate reasons for doing so. (JS 6); *see Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (if a treating or examining physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record).

An inconsistency between a doctor's objective clinical findings and his opinion regarding a claimant's abilities can serve as a proper basis for rejecting the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding the discrepancy between a doctor's clinical notes and opinion regarding the claimant's ability to stand or walk was a clear and convincing reason for rejecting the doctor's opinion); *Morgan v. Commissioner of Social Security*, 169 F.3d 595, 603 (9th Cir. 1999) (internal inconsistencies in doctor's report is relevant evidence). In this case, the ALJ reasonably found that Dr. Handleman's assessment of marked limitations was inconsistent with his own findings on examination. (AR 16.) For example, Dr. Handleman opined that Plaintiff has marked limitations in concentration, persistence and pace, and "problems with cognition, orientation, and memory." (AR 299-300.) Although Plaintiff was unable to do serial sevens, Dr. Handleman found that Plaintiff was capable of performing serials threes, could spell the word "world" both forward and back very slowly, and was able to register three out of three items after five minutes. (AR 16, 299); *see* 20 C.F.R pt. 404, subpart P, app. 1 § 12.00(C)(3) ("In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits.") Further, Dr. Handleman specifically found that Plaintiff was "oriented to person, place, time, and date" and that Plaintiff

Page 3

displayed a fund of knowledge with respect to the current and former presidents that was "surprisingly good." (AR 16, 299.) Dr. Handleman's findings that Plaintiff had "major problems with irritability and social isolationism" and "marked limitation maintaining social functioning" also conflicted with his findings on examination. (AR 298, 300.) Dr. Handleman reported that Plaintiff was "cooperative," "maintained good eye contact throughout the interview," "was able to establish rapport with [the examiner]," "exhibit[ed] no difficulty interacting with the clinic staff and [the examiner]," and had only a "mild limitation in maintaining composure and even temperament." (AR 298, 300.) Dr. Handleman also indicated that Plaintiff was "in no apparent distress," his "speech was soft and fluent," and his thought process and thought content were normal. (AR 298.) The ALJ properly discounted Dr. Handleman's opinion, as his findings of marked limitations were contradicted by his findings on examination. *See Bayliss*, 427 F.3d at 1216.

      The ALJ further found that Dr. Handleman's opinion of marked limitations in mental functioning was inconsistent with the overall medical record. (AR 16); *see Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("the consistency of the medical opinion with the record as a whole" is relevant to the evaluation of a medical opinion); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (An ALJ may discredit a physician's opinions that "are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings."). For example, Plaintiff reported that he was "borderline retarded," but there were no records to verify Plaintiff's level of intellectual functioning. (AR 16, 299.) There were also no records of any psychiatric hospitalizations, psychiatric counseling, or current use of psychotropic medication. (AR 16, 297.) Dr. Handleman suggested that Plaintiff could possibly experience "significant improvement" if he were appropriately evaluated and medicated. (AR 300); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The ALJ properly concluded that Dr.

1  Handleman's assessment of marked limitations lacked sufficient support in the medical
2  evidence. Even if the record may be susceptible to a different interpretation, the Court
3  must defer to the ALJ's decision. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.
4  2005) ("Where evidence is susceptible to more than one rational interpretation, it is the
5  ALJ's conclusion that must be upheld."); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th
6  Cir. 1982) (explaining that the ALJ may "draw inferences logically flowing from the
7  evidence").

8  Plaintiff's second and third contentions, that the ALJ failed to consider all of
9  Plaintiff's limitations in assessing Plaintiff's RFC and the hypothetical questions
10 presented to the VE were incomplete, are premised on the argument that the ALJ
11 improperly rejected Dr. Handleman's findings that Plaintiff suffers from marked
12 limitations in mental functioning. (JS 8-11.) As analyzed above, however, the ALJ's
13 decision to discount Dr. Handleman's opinion is supported by substantial evidence. Thus,
14 the ALJ did not err in assessing Plaintiff's RFC or in formulating questions for the VE.
15 *See Batson*, 359 F.3d at 1197 ("ALJ was not required to incorporate evidence from the
16 opinions of [plaintiff's] treating physicians, which were permissibly discounted" ), and
17 *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (the ALJ "is free to accept or
18 reject restrictions in a hypothetical question that are not supported by substantial
19 evidence.").

20 Accordingly, Plaintiff is not entitled to a reversal or remand based upon Issues #1,
21 #2, or #3.

22                              **Issue #4**
23 Plaintiff contends that the ALJ failed to provide germane reasons for disregarding
24 the third-party statements of Plaintiff's aunt and caregiver, Cheryl Baysinger. (JS 12-15;
25 AR 35-38, 164-72, 196.) Plaintiff also argues that the ALJ erred by failing to specifically
26 indicate which of Ms. Baysinger's statements were accepted or rejected. (JS 14-15.)
27 Lay witness testimony regarding a claimant's symptoms or impairments is
28 competent evidence that "cannot be disregarded without comment." *Molina v. Astrue*,

674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation marks omitted). "[T]o discount competent lay witness testimony, the ALJ 'must give reasons that are germane to each witness.'" *Id.* (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). The ALJ satisfied these standards in this case.

After noting in the decision that he considered Ms. Baysinger's statements, the ALJ properly discounted the lay evidence because it was inconsistent with the clinical and diagnostic medical evidence of record. (AR 14); *see Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). The ALJ also noted that Ms. Baysinger's statements essentially "mirror[ed]" Plaintiff's own allegations, which the ALJ discussed at length and rejected.[2] (AR 13-14, 16.) The ALJ may reject third party testimony that mirrors the claimant's testimony where the claimant's testimony is found to be not credible. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that ALJ gave a germane reason for rejecting claimant's wife's testimony where it was similar to claimant's own complaints that were properly rejected); *Molina*, 674 F.3d at 1114 ("[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."). Because the ALJ found that Ms. Baysinger's statements were substantially

---

[2] The ALJ offered clear and convincing reasons for rejecting Plaintiff's testimony. (AR 13-14, 16.) For example, the ALJ cited inconsistencies in Plaintiff's statements about his activities of daily living. (AR 13-14, 16, 174-79, 298); *see Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (in weighing a claimant's credibility, and ALJ may consider "inconsistencies in testimony or between testimony and conduct"). The ALJ noted that although Plaintiff reported that he could do various activities of daily living (sometimes helps with chores or cleaning and maintains adequate self-care skills of bathing, dressing, eating, toileting, and safety precautions), he also claimed to have difficulty talking, seeing, remembering, completing tasks, concentrating, understanding, and following instructions. (AR 14, 174-79, 298.) The ALJ also found that Plaintiff's testimony was not supported by the objective medical evidence. (AR 16); *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). As discussed, there was no record of prior mental health treatment, and Dr. Handleman's assessment of marked limitations conflicted with his findings on examination and the medical record. (AR 16.) Plaintiff does not challenge the ALJ's adverse credibility determination.

similar to Plaintiff's discredited allegations, failure to specifically address any of the third party statements was harmless. *Molina*, 674 F.3d at 1122.[3]

Accordingly, reversal or remand is not warranted based on Issue #4.

## ORDER

The Court finds that the ALJ's determination of non-disability is free of legal error and supported by substantial evidence in the record. Therefore, Plaintiff's request for an order directing the payment of benefits or remanding this case for further proceedings is DENIED, and the Commissioner's request for an order affirming the Commissioner's final decision and dismissing the action is GRANTED. The clerk shall enter judgment, close the file and terminate all pending motions.

DATED: December 17, 2014

ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE

---

[3] The ALJ also rejected Ms. Baysinger's statements because she had a pecuniary interest in the outcome of Plaintiff's case, and because she was not a medical professional. (AR 12.) These additional reasons were not valid grounds for rejecting Ms. Baysinger's statements. *See, e.g., Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) ("[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony"); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (ALJ must consider observations of non-medical sources, e.g., lay witnesses, as to how impairment affects claimant's ability to work). Nonetheless, because the ALJ provided other valid reasons for rejecting Ms. Baysinger's statements, any error was harmless. *See Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir. 2006) (an error in addressing lay witness testimony favorable to the claimant is harmless, "if no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").